UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANA M. ACEVEDO,

                              :

           Plaintiff,         :       OPINION AND ORDER

       -against-         :

                                20 Civ. 8027 (GWG)
ANDREW SAUL,

                              :

           Defendant.
------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Ana M. Acevedo brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of the final decision of the Commissioner of Social Security (the

"Commissioner") denying plaintiff's claim for Disability Insurance Benefits ("DIB").  Both

parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

12(c).[1]  For the reasons set forth below, Acevedo's motion is denied, and the Commissioner's

cross-motion is granted.

I.      BACKGROUND

     A.  Procedural History

Acevedo applied for DIB on March 26, 2018.  See SSA Administrative Record, filed

April 13, 2021 (Docket # 14) ("R."), at 147-53.  She alleged that her disability began on January

3, 2018, when she was 54 years old.  See R. 78, 147.  The Social Security Administration

---

[1] See Plaintiff's Motion for Summary Judgment, filed June 14, 2021 (Docket # 16);
Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, filed June 14,
2021 (Docket # 17) ("Pl. Mem."); Defendant's Cross-Motion for Judgment on the Pleadings,
filed July 30, 2021 (Docket # 20); Memorandum of Law in Support of Defendant's Cross-
Motion for Judgment on the Pleadings, filed July 30, 2021 (Docket # 21) ("Def. Mem."); Letter
from Joseph A. Romano, dated August 17, 2021 (Docket # 22).

("SSA") denied the application on June 18, 2018, R. 83, and Acevedo sought review by an

Administrative Law Judge ("ALJ"), R. 95-96.  A hearing was held on May 15, 2019.  R. 40.  In a

written decision dated July 3, 2019, the ALJ found that Acevedo was not disabled.  See R. 13,

24-25.  On August 6, 2020, the Appeals Council denied Acevedo's request for review of the

ALJ's decision.  R. 1.  This action followed.

     B.  The Hearing Before the ALJ

     The hearing was held by video conference before an ALJ in Newark, New Jersey.  R. 38.

Acevedo and her representative Shailen Vazirani appeared from Bronx, New York, while a

vocational expert ("VE"), Christine Ditrinco, appeared via telephone.  R. 40.

     Acevedo testified that she lives alone in an apartment.  R. 49.  Acevedo does not drive,

and her transportation was generally a car service provided by her health insurance company.  R.

51.  Acevedo has an 11th-grade education and completed a GED.  R. 43.  Acevedo has not

worked since January 2018, when she quit her position as a front office clerk due to "issues"

with her right hip, pain in her joints and knees which she described as fibromyalgia, glaucoma in

her left eye, and unspecified spinal issues.  R. 45-46, 57.  Before that, Acevedo worked as an

office clerk.  See R. 44, 59-60.

     Describing her typical day, Acevedo testified that she was able to prepare meals, but did

not often leave her apartment.  R. 49.  Acevedo was unable to sweep and perform chores around

the apartment due to pain in her "hands trying to move around the mop" and "throbbing . . . and

sharp [back] pain," which prevents her from completing household tasks.  Id.  Acevedo said she

could sit or stand for approximately twenty minutes without experiencing pain in her knees, hip,

or back, and could not walk a full block without experiencing pain.  R. 50.  Acevedo reported

using a knee brace and cane, the latter of which she claimed was prescribed by Dr. Arthur

Weiner.  R. 50-51.  Acevedo testified that glaucoma in her left eye prevented her from seeing with that eye, at both short and long distances, and that she was unable to read the papers in front of her, although she acknowledged that she may have needed new glasses.  R. 52.

Acevedo described several medications she took to treat her various sources of pain.  For her knee pain, Acevedo takes gabapentin, which makes her "loopy, dizzy," and "nauseous[]." R. 47.  Acevedo tried epidural injections to relieve the pain in her back and hip, but these were unsuccessful.  R. 48.  Acevedo attended physical therapy twice and testified that Dr. Gitkin was considering back surgery as a next step.  R. 48-49.

VE Christine Ditrinco testified that Acevedo's prior work could be categorized as either office clerk or front office clerk.  R. 57.

C.  The Medical Evidence

Both Acevedo and the Commissioner have provided detailed summaries of the medical evidence.  See Pl. Mem. at 6-14; Def. Mem. at 2-9.  The Court had directed the parties to specify any objections they had to the opposing party's summary of the record, see Scheduling Order, filed April 14, 2021 (Docket # 15), ¶ 5, and neither party has done so.  Accordingly, the Court adopts the parties' summaries of the medical evidence as accurate and complete for purpose of the issues raised in this suit.  We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

D.  The ALJ's Decision

The ALJ denied Acevedo's application in a written decision dated July 3, 2019.  See R. 13.  The ALJ first found that Acevedo met "the insured status requirements of the Social Security Act through December 31, 2020."  R. 15.  Then, proceeding through the five-step test set forth in SSA regulations, the ALJ found at step one that Acevedo had "not engaged in

substantial gainful activity since January 3, 2018." Id.

At step two, the ALJ found that Acevedo had the following severe impairments: "right knee and right hip osteoarthritis, degenerative disc disease, plantar fasciitis and left heel spur." Id.  The ALJ found that several of Acevedo's other medical conditions did not rise to the level of a severe impairment.  For example, the ALJ found that Acevedo's asthma was well-managed with pharmaceutical therapy, and that a restriction that Acevedo not be exposed to concentrated respiratory irritants would sufficiently account for her asthma.  R. 15-16.  The ALJ found that Acevedo's vision issues did not raise to the level of a severe impairment because Dr. Theventhiran evaluated Acevedo's eyes in January 2019 and concluded that surgery was unnecessary, recommending only monitoring.  R. 16.  The ALJ found that Acevedo's obesity was not a severe impairment, as "the record does not reflect any limitations associated therewith."  Id.  The ALJ also concluded that Acevedo's anxiety disorder and depression did not rise to the level of a severe impairment, applying "the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders" to conclude that Acevedo had only mild limitations as a result of her medically determinable mental impairments.  R. 16-17.

At step three, the ALJ concluded that none of Acevedo's severe impairments singly or in combination met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 18.  The ALJ considered Listing 1.00 (musculoskeletal impairments), but concluded that the record failed to establish a severe impairment under that Listing.  Id.  Specifically, the ALJ found a lack of evidence documenting an "inability to ambulate effectively," "inability to perform fine and gross movements effectively," "sensory or reflex loss," or "a major dysfunction of any joint."  Id.

The ALJ then assessed Acevedo's residual functional capacity ("RFC").  The ALJ

determined that Acevedo retained the ability to perform light work, as defined in 20 C.F.R. 404.1567(b), except that:

> [C]laimant can lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an eight-hour workday, and stand and walk for a combined total of 6 hours in an eight-hour workday.  Claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and never climb ladders[,] ropes, or scaffolds, or work at unprotected heights or around hazardous moving mechanical parts.  Claimant can occasionally work in humidity and wetness and be exposed to dust, odors, fumes and other pulmonary irritants, and extreme cold and heat.

R. 18-19.

The ALJ considered Acevedo's descriptions of her own symptoms and impairments, but found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  R. 20.  The ALJ based this conclusion, as well as his overall conclusion as to Acevedo's RFC, on an evaluation of the opinions of Drs. Schwechter, Gitkind, Hascalovici, Cho, Kitei, Elsinger, Weiner, Revan, Juriga, Sonthineni, Bacalla, Hamersma, and Porcelli.  R. 20-23. The ALJ also considered Acevedo's hearing testimony and adult function report.  R. 19, 22.

At step four, the ALJ concluded that Acevedo was "capable of performing past relevant work as an office clerk (DOT 209.562-010, SVP 3, light) and front office clerk (DOT 237.367-038, SVP 4, sedentary)."  R. 23-24.  The ALJ found that both of these jobs met the "recency, duration and [substantial gainful activity] requirements and [were] past relevant work," relying on the VE's testimony, earnings queries, and Acevedo's Work History Report. R. 24.  The ALJ compared Acevedo's RFC to "the physical and mental demands of this work" and concluded that she was "able to perform it as actually and generally performed."  Id.  Accordingly, the ALJ determined that Acevedo was not disabled under the Act.  Id.

II.     GOVERNING STANDARDS OF LAW

A.  Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (punctuation omitted).  Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists."  Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled."  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).  Rather, substantial evidence is "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008).  "It means   and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (punctuation omitted).  The

6

"threshold for such evidentiary sufficiency is not high." Id.  The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original, punctuation omitted).  "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision."  Johnson, 563 F. Supp. 2d at 454 (punctuation omitted).

B.  Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the

Commissioner must use in evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience.  See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work."  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is able to do such work, he or she is not disabled.  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot perform other work, he or she will be deemed disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The claimant bears the burden of proof on all steps except the final one   that is, proving that there is other work the claimant can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

8

C.  Credibility Determinations

"It is the function of the [Commissioner], not [the reviewing court], to resolve

evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."

Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (citing Perales,

402 U.S. at 399) (additional citations omitted).  Thus, the ALJ, "after weighing objective

medical evidence, the claimant's demeanor, and other indicia of credibility . . . may decide to

discredit the claimant's subjective estimation of the degree of impairment."  Tejada v. Apfel, 167

F.3d 770, 775-76 (2d Cir. 1999) (citing Pascariello v. Heckler, 621 F. Supp. 1032, 1036

(S.D.N.Y. 1985)).  Nonetheless, when discounting a claimant's credibility regarding his or her

residual functional capacity, regulations impose some burden on the ALJ to explain his or her

decision.  As the Second Circuit has stated:

> When determining a claimant's RFC, the ALJ is required to take the claimant's
> reports of pain and other limitations into account, 20 C.F.R. § 416.929; see
> McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 704-05 (2d
> Cir. 1980), but is not required to accept the claimant's subjective complaints
> without question; he may exercise discretion in weighing the credibility of the
> claimant's testimony in light of the other evidence in the record.  Marcus v.
> Califano, 615 F.2d 23, 27 (2d Cir. 1979).

Genier, 606 F.3d at 49; see also 20 C.F.R. § 404.1529.  To evaluate a claimant's assertion of a

limitation, the ALJ must engage in a two-step process:

> At the first step, the ALJ must decide whether the claimant suffers from a
> medically determinable impairment that could reasonably be expected to produce
> the symptoms alleged.  20 C.F.R. § 404.1529(b).  That requirement stems from
> the fact that subjective assertions of pain alone cannot ground a finding of
> disability.  20 C.F.R. § 404.1529(a).  If the claimant does suffer from such an
> impairment, at the second step, the ALJ must consider "the extent to which [the
> claimant's] symptoms can reasonably be accepted as consistent with the objective
> medical evidence and other evidence" of record.  Id.  The ALJ must consider
> "[s]tatements [the claimant] or others make about [his] impairment(s), [his]
> restrictions, [his] daily activities, [his] efforts to work, or any other relevant
> statements [he] make[s] to medical sources during the course of examination or

treatment, or to [the agency] during interviews, on applications, in letters, and in
testimony in [its] administrative proceedings."  20 C.F.R. § 404.1512(b)(3); see
also 20 C.F.R. § 404.1529(a); S.S.R. 96-7p.

Genier, 606 F.3d at 49 (alterations and emphasis in original).

The SSA has issued regulations relating to reports of pain or other symptoms affecting

the ability to work by a claimant for disability benefits.  See 20 C.F.R. § 404.1529(c).  These

regulations provide, inter alia, that the SSA "will not reject [a claimant's] statements about the

intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms

have on [her] ability to work solely because the available objective medical evidence does not

substantiate [her] statements."  Id. § 404.1529(c)(2).  The regulations also provide that the SSA

"will consider whether there are any inconsistencies in the evidence and the extent to which

there are any conflicts between [a claimant's] statements and the rest of the evidence."  Id.

§ 404.1529(c)(4).

Where an ALJ rejects witness testimony as not credible, the basis for the finding

"must . . . be set forth with sufficient specificity to permit intelligible plenary review of the

record."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing

Carroll, 705 F.2d at 643); accord Craig, 218 F. Supp. 3d at 263.  The ALJ must make this

determination "in light of medical findings and other evidence[ ] regarding the true extent of the

pain alleged by the claimant."  Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984) (internal

quotation marks omitted) (quoting McLaughlin, 612 F.2d at 705).  However, where an ALJ gives

specific reasons for finding the claimant not credible, the ALJ's credibility determination "is

generally entitled to deference on appeal."  Selian, 708 F.3d at 420 (citation omitted).  Thus, "[i]f

the [Commissioner's] findings are supported by substantial evidence, the court must uphold the

ALJ's decision to discount a claimant's subjective complaints."  Aponte v. Sec'y, Dep't of

Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal citations omitted); see also

42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive . . . .").

III.   DISCUSSION

Acevedo argues that (1) the ALJ incorrectly found several of Acevedo's impairments to

be non-severe, Pl. Mem. at 19; (2) the ALJ did not appropriately weigh the credibility of

Acevedo's testimony, id. at 23-24; and (3) the ALJ's RFC determination was not supported by

substantial evidence, id. at 17-22, 24.  We address these arguments in turn.

A.   ALJ's Step Two Assessment of Impairment Severity

Under the Commissioner's regulations, an alleged impairment is "severe" only "if it

significantly limits an individual's physical or mental abilities to do basic work activities."  SSR

96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1520(c).  Basic work

activities include the following: "'walking, standing, sitting, lifting, pushing, pulling, reaching,

carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out and

remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to

supervision, co-workers and usual work situations.'"  Taylor v. Astrue, 32 F. Supp. 3d 253, 265

(N.D.N.Y. 2012) (alterations in original) (quoting Gibbs v. Astrue, 2008 WL 2627714, at *16

(S.D.N.Y. July 2, 2008)) (additional citation omitted).  "[T]he 'mere presence of a disease or

impairment, or establishing that a person has been diagnosed or treated for a disease or

impairment,' is not, by itself, sufficient to render a condition 'severe.'"  Taylor, 32 F. Supp. 3d at

265 (quoting Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).

Acevedo maintains that the ALJ erred in concluding that she had only four severe impairments because Acevedo's "asthma, obesity, left eye vision impairment, glaucoma left eye, depression and anxiety should have been deemed severe as well."  Pl. Mem. at 19.

The ALJ's conclusion that Acevedo's glaucoma, asthma, obesity, anxiety, and depression did not constitute severe impairments is supported by the record.  Acevedo's vision was assessed by Dr. Theventhiran in January 2019, who documented that she had 20/20 vision in each eye when utilizing her glasses. R. 796.  While Acevedo was diagnosed with "dermal nevus"[2] of the left eyelid and retinal pigmentation, R. 799, and claimed her vision was blurry, see R. 802, there is no objective evidence in the record demonstrating vision problems.  The non-severity of Acevedo's asthma was similarly supported by the record, as Dr. Jariwala noted that Acevedo's asthma symptoms were improving and controlled by her then-current medications. R. 652.  The ALJ's finding that Acevedo's obesity was not severe was also supported by the record, which was devoid of even a suggestion that Acevedo's obesity caused any functional limitations.  R. 16, 441.  The ALJ also determined that Acevedo had mild limitations in each of the four areas of mental functioning, but these conclusions were each based on giving credit to Acevedo's self-reported mental difficulties. R. 16-17.  None of the documentary medical evidence in the record supported the conclusion that Acevedo had a severe limitation in her mental functioning.  While Acevedo highlights Dr. Porcelli's findings that Acevedo may be mildly limited with regard to "understanding, remembering and applying complex direction and instruction," Pl. Mem. at 18 (quoting R. 462), Dr. Porcelli went on to conclude that Acevedo had "no limitations with regard

---

[2]  "Nevus" is defined as a "circumscribed malformation of the skin, especially if colored by hyperpigmentation or increased vascularity . . . .  A benign localized overgrowth of melanin-forming cells of the skin present at birth or appearing early in life."  Stedman's Medical Dictionary 1215 (27th ed. 2000).

to using reason and judgment to make work-related decisions," and "no limitations with regard to sustaining an ordinary routine or regular attendance at work," R. 462.

Furthermore, once the ALJ determined that Acevedo had at least one severe impairment, the ALJ was obligated to "consider all of [her] medically determinable impairments of which [he was] aware, including [her] medically determinable impairments that are not 'severe,'" when assessing her RFC.  See 20 C.F.R. § 404.1545(a)(2).  So long as a non-severe impairment is considered in assessing a claimant's RFC at steps three and four, any improper labeling of an impairment or combination of impairments as non-severe is not reversible error.  See Williams v. Colvin, 98 F. Supp. 3d 614, 629-30 (W.D.N.Y. 2015); see also Fortier v. Astrue, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012) ("[B]ecause the ALJ found at least one impairment to be severe and continued to step three in the sequential evaluation process, her failure to recognize all of Plaintiff's severe impairments was harmless error.").  The ALJ engaged in such consideration of each of Acevedo's non-severe impairments, see R. 20-23, and therefore no reversible error occurred at step two.

   B.  Acevedo's Credibility and SSR 16-3p

Acevedo argues that the ALJ erred in concluding that Acevedo's "statements about the intensity, persistence, and limiting effects of [Acevedo's] pain and symptoms [were] not entirely consistent with the evidence of record."  Pl. Mem. at 23.  In particular, Acevedo argues that SSR 16-3p required the ALJ to view Acevedo's "continuous and persistent efforts to seek treatment and relief of pain and other symptoms" as bolstering her credibility.  Id.  Acevedo notes that she "received a three-cortisone injection to her left foot," "underwent three rounds of Visco supplementation injections," "underwent two a [sic] right sacroiliac joint injection," and "three cortisone injections to her right knee."  Id.

13

SSA 16-3p provides: "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."  The ALJ's analysis conformed to Ruling 16-3p.  The ALJ specifically noted that Acevedo's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 20 (emphasis added).  The ALJ reviewed Acevedo's history of receiving treatment for osteoarthritis of her hip and knee and noted the degenerative changes to Acevedo's lumbar spine, but ultimately concluded that Acevedo's "reported activities of daily living indicate that she is functioning fairly well on a day-to-day basis."  R. 22.  For example, the ALJ observed that Acevedo could "attend to her personal needs except for some assistance with her hair, she can climb stairs, go out alone, and shop in stores for groceries and other household needs."  Id.  The ALJ further reasoned that objective measures of Acevedo's osteoarthritis and hip degeneration indicated only mild severity, with "minimal" restrictions in ranges of motion.  Id.

"If the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain."  Aponte, 728 F.2d at 591 (internal citations omitted).  Here, there is substantial evidence in the record supporting the ALJ's conclusion that the evidence presented did "not support the level of debilitation" Acevedo claimed.  R. 22.  While SSA 16-3p suggests that persistent pursuit of treatment may support a claimant's credibility, it does not definitively compel an ALJ to accept a claimant's assertions as to her symptoms.  Moreover, an "ALJ is not required to explicitly address each and every statement made in the record that might implicate his evaluation of the claimant's credibility as

long as 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision.'"

Colbert v. Comm'r of Soc. Sec., 313 F. Supp. 3d 562, 580 (S.D.N.Y. 2019) (quoting Cichocki v.

Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order)).  Because substantial evidence

supports the ALJ's decision, the ALJ did not err in evaluating Acevedo's credibility.

    C.  The ALJ's RFC

    The ALJ determined that Acevedo had the RFC to

> perform light work as defined in 20 C.F.R. 404.1567(b) except claimant can lift/carry and
> push/pull 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an eight-
> hour workday, and stand and walk for a combined total of 6 hours in an eight-hour
> workday.  Claimant can occasionally climb ramps and stairs, balance, stoop, kneel,
> crouch, and crawl, and never climb ladders[,] ropes, or scaffolds, or work at unprotected
> heights or around hazardous moving mechanical parts.  Claimant can occasionally work
> in humidity and wetness and be exposed to dust, odors, fumes and other pulmonary
> irritants, and extreme cold and heat.

R. 18-19.  Acevedo faults the ALJ's RFC determination for five reasons: (1) the finding that

Acevedo has the RFC to do light work is not supported by substantial evidence in the record; (2)

the ALJ failed to adequately consider Acevedo's mental impairments in his RFC analysis; (3)

SSR 83-14 required the ALJ to find that Acevedo's capacity to perform light work was

significantly diminished by her visual impairments; (4) the ALJ erred by concluding that

Acevedo's visual limitations did not preclude her from performing light work; and (5) the ALJ

failed to consider the impact of Acevedo's medications and the side effects of those medications

on her functional limitations.  See Pl. Mem. 2-3.  We address these arguments next.

    1.  The ALJ's Determination that Acevedo Could Perform Light Work

    A claimant's RFC is "the most [a claimant] can still do despite [his or her] limitations,"

which include both physical and mental limitations.  20 C.F.R. § 404.1545(a)(1).  The RFC

determination "must be set forth with sufficient specificity to enable [the Court] to decide

whether the determination is supported by substantial evidence."  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

Acevedo argues that the ALJ's determination that she could perform light work was contrary to the objective medical evidence and improperly discredited medical opinion evidence that suggested greater limitations in Acevedo's ability to work.  Pl. Mem. at 16.  Acevedo maintains that the ALJ's decision lacks a "narrative discussion regarding the limitations in the [RFC]."  Id. at 17.  Additionally, Acevedo finds fault with the ALJ's rejection of Dr. Sonthineni's suggestion of a four-hour limit on standing and walking, failure to credit Dr. Cho's diagnoses of various spinal conditions, failure to adopt Dr. Gitkind's conclusion that Acevedo was disabled and in pain, and insufficient consideration of Dr. Revan's opinion advocating "moderate" limitations for walking, standing, and climbing stairs.  Id.  The ALJ properly evaluated the evidence in determining that Acevedo could perform light work as defined in 20 C.F.R. § 416.967(b), including the limitation that Acevedo could stand and walk for a combined six hours in an eight-hour workday.  In reaching this conclusion, the ALJ considered state agency physician Dr. Sonthineni's evaluation of Acevedo's file.  R. 22.  The ALJ found Dr. Sonthineni's analysis somewhat persuasive, but found no support in the medical evidence in the record for its conclusion that Acevedo could stand or walk for only four hours in an eight-hour workday.  R. 22.  The ALJ explained that he relied on state agency physician Dr. Bacalla's review of Acevedo's file and his commentary that Dr. Sonthineni's "limited light RFC provided is somewhat generous but modifying the RFC is a [substitution of judgment] and not going to make a difference in the decision."  R. 22-23 (citing R. 502).  The ALJ directly addressed Dr. Cho's findings, noting that the examination was largely normal, albeit with complaints of pain. R. 20-21.

16

Additionally, the ALJ considered Dr. Gitkind's conclusion that Acevedo's presentation was consistent with intra-articular hip pathology, but observed that "an x-ray of claimant's pelvis in March 2018 showed no substantial degenerative changes and [that] her sacroiliac joints were normal." R. 21.  While Acevedo highlights Dr. Revan's conclusion that Acevedo had "mild to moderate limitations walking, standing, and climbing stairs," Pl. Mem. at 14 (citing R. 465-67), the ALJ stressed Dr. Revan's observations that Acevedo could "walk on heels and toes without difficulty," and had full range of motion of the hips, knees, and ankles, R. 21, 467.  Further, the ALJ relied upon Acevedo's reported activities of daily living, including her ability to "attend to her personal needs except for some assistance with her hair, she can climb stairs, go out alone, and shop in stores for groceries and other household needs." R. 22.  The ALJ could properly conclude from the evidence in the record that "the objective signs and symptoms documented in the record do not support the level of limitation described by the claimant." R. 22.

Certainly, the evidence presented did not require the ALJ to make the finding that he did.  Nonetheless, given the deferential standard, these medical findings together constitute substantial evidence to support an RFC of light work.  See Mancuso v. Astrue, 361 F. App'x 176, 178 (2d Cir. 2010) (ALJ's determination that claimant had the RFC to perform light work "was supported by objective evidence of physical examinations at which physicians reported [the claimant's] full range of motion and strength in her upper and lower extremities, ability to walk without difficulty, and lack of muscle atrophy.").

In any event, in an argument not opposed by plaintiff, the Government points out that any error in the determination regarding the limitations on standing would not alter the ultimate conclusion that plaintiff was not disabled.  Def. Mem. at 16-17.  The ALJ specifically found that plaintiff could return to her prior job of "front office clerk" (called "receptionist" in the

17

Dictionary of Occupational Titles (237.367-038), 1991 WL 672192), which is a "sedentary" position.  R. 23.  This job requires sitting "most of the time," 1991 WL 672192, and thus could be performed even with the four-hour limitation suggested by Dr. Sonthineni on standing and walking.

2.  ALJ's Consideration of Acevedo's Mental Impairments

Acevedo challenges the ALJ's RFC determination by arguing that it failed to consider her medically determinable mental impairments, including anxiety disorder and depression.  Pl. Mem. at 18.  Acevedo contends that the ALJ's conclusion that her mental impairments were non-severe did not obviate the need to incorporate those impairments into an RFC analysis.  Id.

The ALJ's assessment of Acevedo's RFC incorporated several limitations arising from Acevedo's mental impairments.  During step two, the ALJ applied the "paragraph B" criteria[3] to conclude that Acevedo had only mild limitations in each of the four broad areas of mental functioning, meaning her mental impairment was not severe.  R. 16-17.  The ALJ's RFC analysis reiterated this conclusion that "the record supports no more than mild functional limitations" and that Acevedo's depression and anxiety were non-severe.  R. 21.  The ALJ further noted that Acevedo had not "testif[ied] at the hearing how these conditions impair her ability to work."  Id. Nonetheless, the ALJ did not overlook Acevedo's mental impairments when reviewing medical opinion testimony in the record.  Although the ALJ found Dr. Sonthineni's opinion somewhat persuasive, the ALJ concluded that the record supported greater limitations arising from

---

[3]  As the ALJ explained, the "paragraph B" criteria are a set of four areas of mental functioning included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, for use in evaluating mental disorders.  R. 16.  The four areas of mental functioning are "understanding, remembering, or applying information," "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself."  See R. 16-17.

Acevedo's mental impairments than Dr. Sonthineni recommended, "including mild limitations in claimant's ability to understand, remember, or apply information and concentrate, persist, or maintain pace."  R. 22.  The ALJ similarly found state agency physician Dr. Hamersma's opinion to be somewhat persuasive, but reiterated that the record supported mild limitations in Acevedo's ability to deal with information and maintain pace.  R. 22-23.  The ALJ found somewhat persuasive Dr. Porcelli's opinion that Acevedo was "mildly limited with regard to understanding, remembering, and applying complex direction and instruction, and sustaining concentration and performing a task at a consistent pace" and "may have a mild limitation with regard to regulating emotion, controlling behavior, and maintaining well-being."  R. 23.  The ALJ added that "the records reflect that claimant also has a mild limitation in interacting with others."  Id.

The record illustrates both that the ALJ considered Acevedo's non-severe mental impairments during the RFC analysis and that the record supported the ALJ's determination that these impairments did not preclude her from performing light or sedentary work.  R. 22-23.  In fact, when Acevedo was asked at the hearing whether she had "any other ailments"     aside from issues with her knees, back, and hip     that were preventing her from working, she did not identify her anxiety or depression.  R. 52.  Moreover, as reviewed above, the ALJ actually found greater limitations from Acevedo's mental impairments than the medical experts did.  See R. 22-23.  Although the ALJ's decision carefully considered these limitations, it concluded that each of them were mild.  The ALJ's decision therefore appropriately included an evaluation of Acevedo's mental impairments in its RFC analysis.  See Michelle B. v. Comm'r of Soc. Sec., 2021 WL 3022036, at *7 (N.D.N.Y. July 16, 2021) (upholding ALJ's RFC analysis that considered claimant's mental impairments but did not include them in the RFC itself).

19

### 3.  SSR 83-14 and Acevedo's Visual Impairments

Acevedo argues that the ALJ committed error by failing to account for her visual impairment under SSR 83-14 because she had a visual impairment that "causes the person to be a hazard to self and others."  Pl. Mem. at 21.  SSR 83-14 provides an example of how a non-exertional impairment could render an individual unable to perform light work:

> Where a person has a visual impairment which is not of Listing severity but causes the person to be a hazard to self and others      usually a constriction of visual fields rather than a loss of acuity      the manifestations of tripping over boxes while walking, inability to detect approaching persons or objects, difficulty in walking up and down stairs, etc., will indicate to the decisionmaker that the remaining occupational base is significantly diminished for light work (and medium work as well).

In Acevedo's case, the ALJ reviewed the medical evidence in the record and concluded that Acevedo did not have a severe eye impairment.  R. 16.  The record reflects that Dr. Theventhiran examined Acevedo's vision, finding that with the aid of her glasses her vision was 20/20 in her right eye and 20/20-2 in her left eye.  R. 790.  Dr. Kim similarly found Acevedo's visual acuity to be "20/25 +1" in the right eye and "20/25-1" in the left eye, concluding her appointment by noting that the only necessary follow up would be to "[r]eturn for retina prn."[4] R. 805, 808.  Finally, in Acevedo's adult function report, she reported no problems with her vision, responding "Fine" when invited to provide information about her ability to see.  R. 192. The ALJ summarized this evidence by stating that "no objective testing or treatment notes indicat[ed] any limitations and claimant had only minimal complaints of blurry vision."  R. 16. Thus, there was substantial evidence in the record supporting the ALJ's determination that Acevedo did not have a severe eye condition.  As a result, the language Acevedo identifies in

---

[4]  P.r.n. is an abbreviation for the Latin "pro re nata," meaning "as the occasion arises; when necessary."  Stedman's Medical Dictionary 1445 (27th ed. 2000).

SSR 83-14 is inapplicable.

    4. <u>SSR 85-15</u>

Acevedo also cites SSR 85-15, which explains that "if a person's visual impairment were to eliminate all jobs that involve very good vision . . . a finding of disability could be appropriate in the relatively few instances in which the claimant's vocational profile is extremely adverse." Acevedo argues that she possesses such a vocational profile, in light of her "advanced age" and the fact that she does not possess education beyond a GED.  Pl. Mem. at 22.

However, SSR 85-15 explicitly applies only to "cases involving the evaluation of solely non-exertional impairments."  SSR 85-15, 1985 WL 56857, at *2 (S.S.A. Jan. 1, 1985).  Courts within the Second Circuit have consistently held that SSR 85-15 does not apply to claimants who suffer from both exertional and non-exertional impairments.  See <u>Prince v. Colvin</u>, 2015 WL 1408411, at *21 (S.D.N.Y. Mar. 27, 2015) ("SSR 85-15 applies only where the plaintiff suffers solely from nonexertional limitations, and does not apply where the plaintiff suffers from a combination of exertional and nonexertional impairments"); <u>Yarington v. Colvin</u>, 2014 WL 1219315, at *5 (W.D.N.Y. Mar. 24, 2014) ("SSR 85-15 does not even apply to a case like this, where the claimant suffers from a combination of exertional and non-exertional limitations"); <u>Nosbisch v. Astrue</u>, 2012 WL 1029476, at *5 (W.D.N.Y. Mar. 26, 2012) ("SSR 85-15, however, only addresses the medical-vocational rules for evaluating <u>solely</u> non-exertional impairments") (emphasis in original).  Because the ALJ determined that Acevedo had several exertional impairments, <u>see</u> R. 15-19, SSR 85-15 is inapplicable.

Furthermore, as discussed above, the record supports the ALJ's conclusion that Acevedo did not have a severe eye condition and thus there was no reason to conclude that Acevedo's vision was not sufficient for the performance of any job.

5. <u>Acevedo's Medication Side Effects</u>

Social Security regulations require the Commissioner to consider "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). However, those regulations also expressly state:

> statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.
> . . . .
> Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) [which could reasonably be expected to produce the pain or other symptoms alleged] is present.

20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b).

Acevedo cites to "SSR 96-3p" in support of her argument that the ALJ failed to evaluate her side effects. Pl. Mem. at 24. We begin by noting that SSR 96-3p has been rescinded. <u>See</u> 83 Fed. Reg. 27816-01, 2018 WL 2967523 (June 14, 2018). The now-governing ruling, SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017), provides that an ALJ must evaluate claimed symptoms "using a two-step process set forth in [20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)]." 2017 WL 5180304, at *2; <u>accord</u> <u>Cichocki</u>, 534 F. App'x at 76. The factors at step two include a consideration of side effects, but they also include daily activities, reported pain or other symptoms, "precipitating and aggravating factors," treatment besides medication, coping measures the claimant uses, and "[o]ther factors concerning [the claimant's] functional

limitations and restrictions due to pain or other symptoms."  20 C.F.R. §§ 404.1529(c)(3)(i)-

(vii), 416.929(c)(3)(i)-(vii); see also SSR 16-3p, 2017 WL 5180304, at *4-9 (explaining various

factors that ALJs may consider in evaluating an individual's symptoms).

   Acevedo argues that the ALJ failed to appropriately consider her medications' side

effects in determining her functional limitations.  Pl. Mem. at 24.  Although Acevedo is on

several medications, she highlights a brief portion of her hearing testimony regarding the effects

of one of them, gabapentin: "Well, I am supposed to take it three times [daily], but it makes me

loopy, dizzy.  It gives me dizziness, nauseousness, and they told me I had to take one at a time.

One a day in the evening because then it affects how I feel during the day."  R. 47; see also R.

801 (documenting "dizziness" as a side effect of Acevedo's gabapentin).  Acevedo argues that

"the possible side effects should be evaluated as is [sic] seemingly would impact the Plaintiff's

functional limitations."  Pl. Mem. at 24.

   We reject this argument.  The ALJ's determination of Acevedo's RFC twice referenced

Acevedo's balance issues, noting that they would be accommodated through environmental

restrictions.  R. 19, 23.  The RFC provided that Acevedo could only "occasionally climb ramps

and stairs, balance . . . and never climb ladders[,] ropes, or scaffolds, or work at unprotected

heights or around hazardous moving mechanical parts."  R. 19.  While the ALJ did not

specifically identify Acevedo's reports of dizziness as a side effect of her medication, when "the

evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that

he have mentioned every item of testimony presented to him or have explained why he

considered particular evidence unpersuasive or insufficient to lead him to a conclusion of

disability."  Petrie v. Astrue, 412 F. App'x 401, 407 (2d Cir. 2011) (internal citations omitted);

see also Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) ("[A]n ALJ

23

is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered.") (punctuation omitted).  Other evidence in the record supported the ALJ's decision not to evaluate Acevedo's self-reported dizziness as a greater limitation.  Dr. Cho found that Acevedo was able to "walk on heels and toes without difficulty" and noted that a "Romberg test did not reveal the imbalance."[5]  R. 698.  Dr. Schwechter's evaluation of Acevedo notes that she was negative for dizziness or double vision.  R. 368.  Dr. Revan similarly observed that Acevedo's stance was normal, she could "walk on heels and toes without difficulty," was "[a]ble to rise from chair without difficulty," and did not require assistance getting on and off the exam table.  R. 466.  The records of Acevedo's appointments with Drs. Cho, Schwechter, and Revan indicate Acevedo was taking gabapentin at the time of each appointment.  See R. 369, 465, 702.

In light of this evidence, the ALJ could conclude that Acevedo's self-reported dizziness resulting from her medication was "not entirely consistent with the medical evidence and other evidence in the record."  R. 20.  In any event, substantial evidence supported the ALJ's conclusion that Acevedo's overall balance issues were sufficiently mild that they could be accommodated solely through environmental restrictions.  R. 23.

IV.  CONCLUSION

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings (Docket # 20) is granted and Acevedo's motion (Docket # 16) is denied.

---

[5]  The Romberg Test of Standing Balance on Firm and Compliant Support Surfaces is "a proven and standardized protocol that is commonly used as a screening instrument in balance assessment in both clinical and research settings.  It is designed to identify deficits in standing balance." Nat'l Ctr. for Health Stats., Ctrs. for Disease Control and Prevention, Balance Procedures Manual 1-3 (2001), https://www.cdc.gov/nchs/data/nhanes/ba.pdf.

SO ORDERED.

Dated:  New York, New York
        December 27, 2021

GABRIEL W. GORENSTEIN
United States Magistrate Judge